UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN TREJO HOWARD,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. CV 15-4641-JPR<br><br>**MEMORANDUM DECISION AND ORDER REVERSING COMMISSIONER** |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed May 26, 2016, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1981 and moved to the United States from Honduras around 1990. (Administrative Record ("AR") 118, 251.) She graduated high school in 2000 and worked part time as a nurse's assistant or caregiver from March 2009 until September 2011. (AR 135-36.)

On November 18, 2011, Plaintiff applied for SSI, alleging that she had been unable to work full time since July 1, 2004, because of chronic cocci meningitis.[1] (AR 118, 135; see AR 29.) After her applications were denied initially and on reconsideration (AR 75, 80; see also AR 54, 65), she requested a hearing before an Administrative Law Judge (AR 85). A hearing was held on August 29, 2013, at which Plaintiff appeared without representation and testified through a Spanish-language interpreter. (AR 38-40, 42-43, 115-17.) No vocational expert appeared at the hearing (see AR 38-39); instead, the ALJ propounded posthearing interrogatories to a VE (AR 190), who responded (AR 209-15). The ALJ allowed Plaintiff the opportunity to object or propound cross-interrogatories (AR 199, 218), which she did not do. The ALJ issued an unfavorable decision on November 5, 2013, finding that Plaintiff was not disabled as of her filing date, November 18, 2011.[2] (AR 20, 27.) After

---

[1] Cocci meningitis is a form of "disseminated" coccidioidomycosis, in which a fungal infection becomes widespread throughout the body. See Edison v. United States, 822 F.3d 510, 514 (9th Cir. 2016).

[2] Because SSI payments may not be retroactively awarded, Plaintiff's effective onset date is her filing date. See SSR 83-
(continued...)

2

retaining counsel, Plaintiff requested review from the Appeals Council (AR 15-16), which denied review on April 23, 2015 (AR 1). This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

---

[2] (...continued)
20, 1983 WL 31249, at *1 (1983).

**IV. THE EVALUATION OF DISABILITY**

Claimants are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed.

4

1  § 416.920(a)(4)(iii).

2       If the claimant's impairment or combination of impairments
3  does not meet or equal an impairment in the Listing, the fourth
4  step requires the Commissioner to determine whether the claimant
5  has sufficient residual functional capacity ("RFC")[3] to perform
6  her past work; if so, she is not disabled and the claim must be
7  denied.  § 416.920(a)(4)(iv).  The claimant has the burden of
8  proving she is unable to perform past relevant work.  Drouin, 966
9  F.2d at 1257.  If the claimant meets that burden, a prima facie
10 case of disability is established.  Id.

11      The Commissioner then bears the burden of establishing that
12 the claimant is not disabled because she can perform other
13 substantial gainful work available in the national economy.
14 § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination
15 comprises the fifth and final step in the sequential analysis.
16 § 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
17 at 1257.

18      B.   The ALJ's Application of the Five-Step Process

19      At step one, the ALJ found that Plaintiff had not engaged in
20 substantial gainful activity since November 18, 2011.  (AR 29.)
21 At step two, he found that Plaintiff had a severe impairment
22 based on her conditions of "history of meningitis, status post
23 ventricular peritoneal shunt" and "hydrocephalus."[4]  (Id.)  The

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] Hydrocephalus results from an excessive accumulation of cerebrospinal fluid ("CSF") in the brain, causing abnormal
                                                  (continued...)

ALJ explained that Plaintiff contracted "meningitis in 2004, with subsequent complications of swelling in her head, after which she had to have a shunt placed in October 2011." (AR 30.)  At step three, he determined that Plaintiff's impairments did not meet or equal a listing, noting in particular that her meningitis failed to satisfy Listing 14.07(A)(2) (in order to be presumptively disabling, meningitis infection must either be "resistant to treatment" or require "hospitalization or intravenous treatment three or more times in a 12-month period"). (AR 29-30.)

At step four, the ALJ found that Plaintiff had the RFC to perform a "reduced range of light work," with limitations as follows: (1) lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; (2) standing and walking for up to six hours and sitting for eight hours in an eight-hour workday; (3) occasionally climbing, bending, kneeling, and stooping, but no crawling; (4) less than occasionally pushing, pulling, and reaching above shoulder level on left and right; and (5) no climbing of ladders, working at dangerous heights, operating dangerous machinery, driving a motor vehicle, or ambulating over uneven terrain. (AR 30-31.)  The ALJ explained that he specifically reduced Plaintiff's capacity for "pushing, pulling,

---

[4] (...continued) widening of spaces in brain ventricles and potentially harmful pressure on brain tissues. Hydrocephalus Fact Sheet, Nat'l Inst. Neuro. Disorders & Stroke, http://www.ninds.nih.gov/disorders/hydrocephalus/detail_hydrocephalus.htm (last visited Sept. 15, 2016). "Hydrocephalus is most often treated by surgically inserting a shunt system. . . . [to] divert[] the flow of CSF." Id.

and reaching above the shoulder" based on objective evidence in the record. (AR 30.)

In determining Plaintiff's RFC, the ALJ relied "primarily" on a consulting examiner's February 2012 report assessing Plaintiff with "general limitations for light work," which was "consistent" with the agency medical consultants' RFC findings of "reduced range of light work."[5] (Id.) The ALJ rejected Plaintiff's allegations of subjective symptoms as "not entirely credible" to the extent they conflicted with the RFC. (AR 31-32.)

Based on Plaintiff's RFC, the ALJ found that she could perform her past relevant work as a "Nurse's Assistant/Home Attendant," apparently combining the VE's descriptions of her past jobs as "Nurse's Assistant," DOT 355.674-014, 1991 WL 672944, and "Home Attendant," DOT 354.377-014, 1991 WL 672933 – both of which, according to the VE, were "medium, semi-skilled work" in the DOT but specifically "performed in the light exertional range" by Plaintiff.[6] (AR 32.) Again referencing the VE's findings, the ALJ explained that "an individual with [Plaintiff's] vocational profile and [RFC] could perform both of these jobs, as [she] performed them, but not as they are

---

[5] Those agency medical consultants actually found Plaintiff capable of performing a full range of light work. (See AR 62, 72-73.)

[6] It is unclear whether the VE found Plaintiff's past job to resemble each of those two occupations or to be a "composite" of them with no counterpart in the DOT.

generally performed in the national economy."[7] (AR 33.) Accordingly, the ALJ found her not disabled, ending the sequential evaluation process without reaching step five.

**V.   DISCUSSION**

Plaintiff argues that the ALJ (1) failed his heightened duty to fully and fairly develop the record and safeguard her interests as an unrepresented claimant; (2) improperly discounted her subjective allegations as not fully credible; and (3) erred in finding her capable of performing her past relevant work as a nurse's assistant. (See J. Stip. at 2.)

Because the record was insufficient to support the ALJ's finding that Plaintiff could perform her past relevant work, the matter must be remanded for further analysis and findings. The Court therefore does not reach the other issues.

    A.   <u>The ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work Was Not Supported by Substantial Evidence</u>

        1.   <u>Relevant background</u>

Plaintiff referenced her past job in two reports, an initial disability report dated November 21, 2011 (AR 134-40), and a work-history report dated January 18, 2012 (AR 144-55). She stated that from March 2009 to September 2011, she worked part time as a certified nurse's assistant or "caregiver in the private home," "tak[ing] care of senior." (AR 136, 144.) She worked six hours a day and four days a week for $360 weekly. (AR

---

[7] The ALJ also explained that Plaintiff's past relevant work as a nurse's assistant/home attendant constituted substantial gainful activity because she had worked 24 hours a week and made $360 each week. (AR 33.)

136, 145.)  It was her "only one job in the last 15 years before [she] became unable to work."  (AR 136.)

In the initial disability report, she listed the following daily functional demands of her past job, some of which were inconsistent with each other: no carrying or lifting, lifting up to 10 pounds frequently, standing for three hours, walking for one hour, sitting for one hour, a half hour of stooping, a half hour of kneeling, and two hours of reaching.[8]  (AR 136-37.)  In the work-history report, she gave the daily functional breakdown as follows: lifting and carrying up to 10 to 15 pounds "when going to groceries," lifting up to 10 pounds frequently, standing for two hours, walking for one hour, sitting for two hours, "n/a" stooping and climbing, one hour of kneeling, a half hour of handling large objects, and a half hour of reaching.  (AR 145.)

At the August 29, 2013 hearing, Plaintiff testified that she had worked as a CNA for "two years" before her shunt surgery and that her CNA license had recently expired.  (AR 49.)  The ALJ asked her to list any current physical or mental impairments that would prevent her from performing that work, to which Plaintiff responded,

> Well, I get dizzy a lot and that's why I can't be sitting down or standing up for long periods of time.  I took medication, [INAUDIBLE], and I get nauseous and dizzy with that and I've also gotten blotches on my skin and

---

[8] Although Plaintiff says she worked up to six hours a day, these time periods add up to eight hours.  Some functions, however, are capable of being performed at the same time, perhaps explaining the discrepancy.

```
             after the surgery, that's why I couldn't – I mean two
             years for the surgery – I mean I haven't been able – I
             get really dizzy.  If I bend over –
```
(AR 50.) The ALJ asked whether she had "anything else" to add, restating the same question. (Id.) She then added that she suffered from blurred vision and headaches. (AR 51.) She believed her conditions had "gotten worse" overall since September 2011 in that she got "very nauseous at times" and her dizziness "sometimes" kept her bedridden. (Id.) She stated that she had to go see her doctor "every two weeks." (Id.)

The VE described Plaintiff's past relevant work as "nurse assistant," DOT 355.674-014, and "home attendant," DOT 354.377.014 – both of which were medium, semiskilled work in the DOT but light work "as performed by" Plaintiff. (AR 211 (referencing "Exh 4E," Plaintiff's work-history report).) The VE found that a hypothetical individual with Plaintiff's RFC could perform her past relevant work of "nurse assistant/home attendant" as she actually performed it but not as it is "performed generally" in the national economy or "according to the DOT." (AR 212.)

In support of his testimony, the VE noted that he had reviewed all relevant exhibits, but he "could not open media to listen to [Plaintiff's] audio testimony," which kept him from responding to hypotheticals assuming an individual "possess[ing] the same capabilities and limitations as described by [Plaintiff] in her testimony." (AR 210, 214.)

2. <u>Applicable law</u>

At step four of the five-step disability analysis, a claimant has the burden of proving that she cannot return to her past relevant work, as either actually or generally performed in the national economy. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001); § 416.920(f). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make factual findings to support his conclusion. <u>Pinto</u>, 249 F.3d at 844. In particular, the ALJ must make "specific findings of fact" as to "the individual's RFC" and "the physical and mental demands of the past job/occupation" and whether "the individual's RFC would permit a return to his or her past job or occupation." <u>Ocegueda v. Colvin</u>, 630 F. App'x 676, 677 (9th Cir. 2015) (citing SSR 82-62, 1982 WL 31386, at *4 (1982)).

Although the claimant is the "primary source for vocational documentation," the ALJ may use the VE to assist in the step-four determination as to whether the claimant is able to perform her past relevant work. <u>Ocegueda</u>, 630 F. App'x at 677; <u>see</u> § 416.960(b)(2) (at step four, VE's testimony "may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work"). "Adequate documentation of past work includes factual information about those work demands," and "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained . . . . from the claimant, employer, or other informed source." SSR 82-62, 1982 WL 31386, at *3.

Lastly, the ALJ can properly discharge his responsibility by comparing the specific physical and mental demands of the

claimant's past relevant work with her actual RFC. Pinto, 249 F.3d at 844-45; see SSR 82-62, 1982 WL 31386, at *2 (step four "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work").

### 3. Discussion

The ALJ's finding that Plaintiff was "capable of performing" her actual past work is not supported by substantial evidence. (AR 32.) The ALJ failed to make required factual findings regarding the specific demands of Plaintiff's past relevant work – in particular, the type and degree of "reaching"[9] required, as further explained below – to "assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." See SSR 82-62, 1982 WL 31386, at *3; see also McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011) (ALJ's duty to fully and fairly develop record is heightened when claimant is not represented by counsel). Because the record remained relatively undeveloped as to Plaintiff's past relevant work and its specific functional demands and requirements, it was insufficient to support the ALJ's step-four findings.

Specifically, her past work required some unspecified type of reaching for up to two and a half hours each day (see AR 137,

---

[9] Reaching involves "extending the hands and arms in any direction" and is an activity "required in almost all jobs." SSR 85-15, 1985 WL 56857, at *7 (1985).

145),[10] and yet the ALJ expressly limited Plaintiff to "less than occasionally . . . reach[ing] above shoulder level on the left and right" (AR 30). Nothing in the record described how much of the reaching Plaintiff's past work required was above the shoulder. Given that "occasionally" means occurring from very little up to one-third of the time, see DOT 355.674-014, 1991 WL 672944, the ALJ said Plaintiff could reach above her shoulders only less than occasionally, and Plaintiff reached for up to two and a half hours in a full workday, the ALJ's finding that Plaintiff could perform her past relevant work as performed is not supported by the record. Thus, even assuming the ALJ's RFC findings were fully supported by the record, insufficient evidence showed that Plaintiff could perform her past work as she performed it.

The ALJ's error was not harmless. Not only was Plaintiff possibly unable to perform her actual past work, the ALJ expressly found that she could not perform it as generally performed. The ALJ did not reach step five, and Plaintiff's job base is likely significantly eroded by the ALJ's reaching limits. See SSR 85-15, 1985 WL 56857, at *7 (1985) (noting that because "reaching" is "required in almost all jobs," "[s]ignificant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do"); Caster v. Colvin, No. 6:14-cv-01006-JE, 2016 WL 2940512, at *8 (D. Or. Apr. 27, 2016)

---

[10] Because Plaintiff's past work was part time for six hours a day, her self-described requirement of up to two hours of reaching presumably would be about two and a half hours in a standard eight-hour workday.

(finding remand appropriate because ALJ "did not proceed beyond step four of the sequential evaluation process, thus making it impossible for this court to determine whether Plaintiff retained the capacity to perform other work"), accepted by 2016 WL 2905416 (D. Or. May 18, 2016). Thus, the ALJ's error regarding Plaintiff's past relevant work was not harmless and warrants remand.

B. Remand for Further Proceedings Is Appropriate

When, as here, an ALJ errs, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit as true" rule to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

When the ALJ's findings are so "insufficient" that a court cannot determine whether the rejected testimony should be credited as true, the court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases).

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to develop the record as to whether Plaintiff can perform her past relevant work or any other

14

work. Thus, remand is appropriate. <u>See</u> <u>Garrison</u>, 759 F.3d at 1020 n.26.

On remand, the ALJ should inquire in greater detail into the demands of Plaintiff's past relevant work and her capability to do it, including resolving the inconsistencies between Plaintiff's two reports of her job's functional requirements. (<u>See, e.g.</u>, AR 136-37, 145.)[11] Because the VE was unable to hear and consider Plaintiff's testimony, the ALJ should conduct a new hearing at which both Plaintiff and a VE testify. Because the ALJ will necessarily reassess Plaintiff's credibility based at least in part on that testimony, the Court does not address whether the ALJ erred in finding Plaintiff only partially credible.[12]

---

[11] The ALJ may further develop the record and address any additional unresolved factual discrepancies on remand. (<u>Compare, e.g.</u>, AR 47-48, 51 (Plaintiff's description of living only with aunt) <u>with</u> AR 290 ("claimant lives with her family"), 251 ("lives with her husband in NoHo, 3 dogs, no children"), 166 (Plaintiff's disability report listing her mother at same North Hollywood address).)

[12] But in fact, Plaintiff's meningitis appears to have been "well controlled" by medication (<u>see</u> AR 319 (Nov. 8, 2012 clinical note, describing patient's history of cocci meningitis as "well controlled on Voriconazole"), and to the extent she remained compliant with medication, she "continue[d] to feel well," with no fevers, chills, stiff neck, headaches, night sweats, nausea, dizziness, or vomiting (AR 315; <u>see, e.g.</u>, AR 330, 323, 320, 315). Thus, Plaintiff's claims to the contrary were likely not fully credible.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Decision. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 27, 2016  _____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[13] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."